IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
CIVIL ACTION NO.: 5:23-cv-00201

| | |
|---|---|
| STACEY CAMPBELL, ) | |
| ) | |
| PLAINTIFF, ) | |
| vs. ) | COMPLAINT |
| ) | (Jury Trial Demanded) |
| SAMANTHA GREINER ) | |
| In her official and individual capacity; ) | |
| ) | |
| ) | |
| THE CITY OF RALEIGH ) | |
| ) | |
| DEFENDANTS. ) | |
| ) | |

NOW COMES Plaintiff, Stacey Campbell (hereinafter "Stacey") by and through her undersigned counsel complaining of acts and or omissions of the Defendants, and hereby demands a jury trial on the following:

## **PRELIMINARY STATEMENT**

1. Stacey is an adult Black woman who was stopped, then frisked, confined, handcuffed, strip searched, in the middle of a public street with cars passing by and in front of multiple bystanders without probable cause that she committed any crime.

2. Stacey was stopped, then frisked, confined, handcuffed, strip searched, in the middle of a public street with cars passing by and in front of multiple bystanders without articulable reasonable suspicion that she committed any crime or that she was armed or dangerous.

3. This is a civil rights action in which Stacey seeks relief for the violation of her rights secured by 42 U.S.C. §§ 1983 and 1988, the Fourth and Fourteenth Amendments of the United States Constitution, and overlapping causes of action under North Carolina Law.

4. This is also an action in which Stacey seeks relief for the torts of battery, false imprisonment, false arrest, and negligent and intentional infliction of emotional distress.

5. This is also an action in which Stacey seeks relief for the violation of her rights under the North Carolina State Constitution, Article I, Sections 19, 20, and 36. These rights protect against being taken, imprisoned, or disseized of her liberties, freedom or property but by the law of the land; and the seizure of her person without a warrant or the support of evidence; the enumeration of rights in this Article shall not be construed to impair or deny other rights retained by the people.

**FACTS**

6. Stacey was inside a residence located on or around Pettigrew Street, in Raleigh, North Carolina.

7. Upon information and belief, Samantha Greiner (hereinafter "Defendant Greiner") was on patrol in the area in a Raleigh Police Department vehicle.

8. Defendant Greiner had a reputation in the community area she patrolled for being aggressive and harassing residents and their guests.

9. Stacey went outside to retrieve something from her vehicle which was parked on the street and not in operation.

10. Defendant Greiner parks and exits her marked police vehicle, leaving the door open, and crossing the street coming towards Stacey.

11. Defendant Greiner is shining a flashlight on Stacey while approaching her.

12. Stacey is on the sidewalk at the side of her Cadillac Sports Utility Vehicle.

13. Defendant Greiner comes across the street and yells to Stacey, "What are you doing?" Then immediately orders Stacey to "Get your hands out of your pocket," two times.

14. Defendant Greiner directs Stacey to stand at the front of her the Cadillac, and Stacey complies.

15. Stacey is wearing a full-length black robe and has a purse on her shoulder.

16. Several people are observing this incident and they say something to Stacey and Defendant Greiner during this interaction.

17. Stacey places her purse on the hood of the car and is directed to turn around by Defendant Greiner and Stacey complies.

18. Defendant Greiner has not told Stacey why she stopped Stacey.

19. Defendant Greiner has not identified Stacey.

20. Defendant Greiner has not asked for the vehicle registration.

21. Defendant Greiner is in uniform, but she has not identified herself.

22. Defendant Greiner has not encountered Stacey before, nor does Stacey have a criminal record.

23. Defendant Greiner makes Stacey turn around facing the car to do a pat down, then reaches around and using the palm side of her hands to pat down Stacey.

24. Defendant Greiner then grabs and shakes Stacey's robe.

25. After the pat down, Defendant Greiner lifts the bottom part of Stacey's robe high enough to expose her entire bottom half.

26. Stacey reacts to this and is told to relax by Defendant Greiner.

27. Defendant Greiner has her hand pressed against Stacey's back and was applying pressure.

28. Stacey had back surgery before this incident and has had another surgery since this incident.

29. Defendant Greiner then grabs Stacey's arm whose hand was on the hood of the Cadillac and puts her in handcuffs.

30. Defendant Greiner tells Stacey she did handcuffed her "Because I asked you multiple times to put your hands on the hood."

31. Stacey is visibly confused when Defendant Greiner asks Stacey, "What happened to your white car?"

32. Stacey has never had a white car.

33. Defendant Greiner had not asked for Stacey's name, identification, or any vehicle registration before handcuffing her.

34. Even after Stacey allowed Defendant Greiner to search her purse to get her identification, Defendant Greiner still does not uncuff Stacey despite Stacey's requests.

35. After Defendant Greiner goes to the car and does something on her computer, then returns she finally begins to uncuff Stacey.

36. Defendant Greiner says she didn't type in anything wrong and that Stacey should figure out what is going on with those tags.

37. There was nothing wrong with the registration or tags on Stacey's vehicle.

## PARTIES AND VENUE

38. Stacey re-alleges and incorporates by reference all preceding paragraphs of this Complaint.

39. All actions complained of took place in Raleigh, in Wake County, which are in the Eastern District of North Carolina.

40. At the time of action Stacey was a resident of the city of Raleigh.

41. Defendant City of Raleigh (hereinafter the "City") is a municipal corporation organized by charter under Chapter 160A of the North Carolina General Statutes.

42. The City maintains and operates the Raleigh Police Department (hereinafter "RPD").

43. Employees of RPD are agents of the City, which bears legal responsibility under state law for negligent acts and omissions of RPD in the course of their employment.

44. The City is responsible for the appointment, training, supervision, promotion, and discipline of police officers and supervisory police officers, as well as the individually named Defendant Greiner.

45. At all times the City acted through its managers and policy makers which may include but not be limited to City Council, the Department of Public Safety of the City of Raleigh, the City Manager, or the Chief of Police of RPD who are legal responsible for acts and omissions of RPD.

46. The City bears legal responsibility through their management, supervision, or control, of RPD through the policies, acts, customs, practices, or directives made by the aforementioned managers and policymakers on behalf of the City.

47. Further, upon information and belief, the City, at the time of this action, had waived governmental or sovereign immunity from the state law tort claims in this case pursuant to G.S. § 160A-485, either by participation in a government risk pool or through the purchase of commercial insurance that will indemnify the City and its agents for any judgment against it or its agents named in this action.

48. Upon information and belief, individual Defendant Greiner may be entitled to indemnification by the City under North Carolina law for any liability arising from the conduct described.

49. At the time of action Defendant Greiner was an employee of the City and is being sued in her official capacity for acts taken under color of law within the scope of her employment.

50. At all relevant times, Defendant Greiner was acting as a police officer and in furtherance of objectives related to being a police officer for the City.

51. Upon information and belief Defendant Greiner is a resident of Louisburg, North Carolina, and is also being sued in her individual capacity.

52. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331, 1343(a)(3) and (a)(4) because Plaintiffs' claims arise under law of the United States and seek redress of the deprivation under color of state law of rights guaranteed by the United States Constitution.

53. Plaintiffs further invoke this Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over any and all North Carolina state law claims and causes of action which derive from the same nucleus of operative facts and are part of the same case or controversy that gives rise to the federally based claims and causes of action.

54. Venue is proper for the United States District Court for the Eastern District of North Carolina, pursuant to 28 U.S.C. §§ 1391(b)(1) and (b)(2), and 28 U.S.C. § 1402(b), where Defendants reside and maintain their relevant places of business, and where the actions complained of herein occurred.

# FACTUAL ALLEGATIONS

## I. FALSE ARREST, FALSE IMPRISONMENT, UNLAWFUL SEIZURE

55. Stacey realleges and incorporates by reference all preceding paragraphs of this Complaint and further alleges.

56. Stacey did not have a warrant for her arrest and was not committing a crime or infraction when Defendant Greiner approached her at night.

57. Defendant Greiner was a uniformed officer who gave several orders to Stacey regarding her movement and her ability to move which were against Stacey's will.

58. After Defendant Greiner ordered Stacey to take her hands out of her pocket, she order her to move to the front of her vehicle.

59. A reasonable person would not have felt free to leave at this point.

60. Defendant Greiner orders Stacey to turn around and face the car.

61. Defendant Greiner pats down Stacey.

62. Defendant Greiner searches Stacey.

63. Defendant Greiner orders Stacey to keep her hands on the hood of the vehicle.

64. Defendant Greiner grabs Stacey's arm from over the hood of the vehicle and puts Stacey's hands behind her back and handcuffs her.

65. Defendant Greiner says she puts Stacey in handcuffs because "Because I asked you multiple times to put your hands on the hood."

66. There was not reasonable suspicion to initially seize Stacey or restrict any of her movements.

67. There was not probable cause to initially seize Stacey's or restrict any of her movements.

68. There was not reasonable suspicion or probable cause to continue Stacey's seizure or restriction of her movements.

69. Defendant Greiner pressed down on Stacey's back and later handcuffed her without any reasonable suspicion, probable cause, or any justification supporting the continued detention of Stacey against her will.

70. Even after Defendant Greiner finally identified Stacey, she continued to leave Stacey in handcuffs which was against her will, restricted her movements, and was without justification.

71. That all of Defendant Greiner's acts and omissions complained of were intentional acts.

72. Defendant Greiner arrested and seized Stacey by force and against Stacey's will. This constituted a North Carolina state claim for false arrest.

73. There was not probable cause or a warrant to make an arrest or seizure of Stacey nor was there probable cause to initiate any criminal proceedings against her at the time she was confined against her will. This constitutes the Federal claim of false arrest in support of Stacey's Fourth amendment rights.

74. Defendant Greiner is liable for damages to Stacey for the false arrest and false imprisonment of Stacey.

## II. BATTERY, UNLAWFUL SEARCH AND EXCESSIVE FORCE

75. Stacey re-alleges and incorporates by reference all preceding paragraphs of this Complaint.

76. That Defendant Greiner intended to touch Stacey without Stacey's consent multiple times.

77. That Defendant Greiner's touching was harmful or offensive each time she made contact with Stacey's body without her consent.

78. That Defendant Greiner held Stacey and turned her around to face the Cadillac.

79. That Defendant frisked or patted Stacey down between Stacey's chest and waist.

80. That the robe Stacey was wearing extended well beyond her knees, but Defendant lifted and flipped up the back of the robe exposing Stacey's entire body from the waist down.

81. That after Defendant Greiner exposed Stacey to the public, Defendant Greiner continued to press and push upon the back of Stacey.

82. That Defendant Greiner reached around Stacey and grabbed Stacey's arm to put it behind her back.

83. That Defendant Greiner put handcuffs on Stacey.

84. That none of the touching done by Defendant Greiner was legally justified.

85. Defendant Greiner's confining and continual physical restriction of Stacey's movement without probable cause is an inappropriate and excessive use of force.

86. Defendant Greiner is liable to Stacey for damages.

### III.    NEGLIGENCE PER SE N.C. GEN. STAT. §15A-401

87. Stacey re-alleges and incorporates by reference all preceding paragraphs of this Complaint.

88. Upon information and belief, the North Carolina legislature enacted Section 15A-401(b), at least in part, to promote the safety and protection of the general public by delineating the situations in which officers are permitted and not permitted to make warrantless arrests.

89. Defendant Greiner did not have a warrant to arrest Stacey.

90. Stacey had not committed a misdemeanor nor was she a threat to injure herself, others, or any property.

91. Defendant Greiner had a duty to not arrest Stacey or any other individuals unless Defendant Greiner had a warrant or Stacey committed at least a misdemeanor in her presence and she was a threat to injure herself, or others.

92. Defendant Greiner's conduct was a violation of N.C. Gen. Stat. § 15A-401 et. seq. as it her unlawful arrest fell below the standard laid out by statute.

93. Defendant Greiner's disregard for the provisions of this statute was intentional, willful, and wanton.

94. Defendant Greiner's disregard for the provisions of this statute showed a conscious and deliberate disregard for the rights of Stacey who was intended to be protected by this statute.

95. The City has enabled Defendant Greiner's grossly negligent conduct by failing to properly train her on how and when to make a warrantless arrest.

96. The City has enabled and ratified Defendant Greiner's conduct by failing to properly supervise her in this regard.

97. The City has enabled and ratified Defendant Greiner's conduct by failing to properly discipline her and other officers when they have not properly made a warrantless arrest.

98. The City has enacted polices, which were intended to benefit Stacey and that were in compliance with § 15A-401 et. seq.

99. Stacey's unlawful arrest was foreseeably encouraged by the City's lack of training of when to make warrantless arrests.

100. That by failing to properly train, supervise, or discipline its employees, the City has shown a deliberate indifference to a highly likely recurring situation in violation of this statute.

101. That the City's failure to properly train, supervise, or discipline its employees is the causal link between Stacy's unlawful arrest.

102. Stacey's unlawful arrest was the proximate cause of Defendant Greiner's violation of this statute, which caused damages to Stacey.

### IV. INTENTIONAL AND NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

103. Stacey realleges and incorporates by reference all preceding paragraphs of this Complaint.

104. Defendant Greiner's conduct is extreme and outrageous and exceeds all bounds tolerable by a decent society.

105. Defendant Greiner:

1) Walked up on Stacey at night barking orders for Stacey to get her hands out of her pockets,
2) Gave these orders and initiated this confrontation without reasonable suspicion or probable cause to do so,
3) Put Stacey up against the hood of her own car,
4) Did not ask for a name or identification from Stacey,
5) Did not identify herself,
6) Started patting and frisking Stacey down,

7) Lifted up the full-length robe that Stacey was wearing in the middle of the street with people standing there and cars passing by, and

8) Had a negative attitude with Stacey for reacting to being exposed in the middle of the street.

106. Defendant Greiner's conduct was intended to cause or was recklessly indifferent to the likelihood that it would cause severe emotional distress or embarrassment to Stacey.

107. Defendant Greiner's conduct did in fact cause severe emotional distress or embarrassment to Stacey.

108. Defendant Greiner's conduct exceeded the scope of her authority and acted maliciously, and without probable cause.

109. Stacey has suffered compensable severe emotional distress and embarrassment.

110. In the alternative, Defendant Greiner had a duty to use reasonable care in investigating any perceived infraction or crime she believed Stacey committed.

111. Defendant Greiner fell below that standard and did not have reasonable articulable suspicion, let alone probable cause to detain and seize, pat down or frisk, and strip search Stacey.

112. Defendant Greiner knew or reasonably should have known that her complained of conduct fell below an acceptable standard and it was foreseeable that her complained of conduct would cause Stacey severe emotional distress.

113. Defendant Greiner's conduct did cause severe emotional distress.

114. Defendant Greiner is liable to Stacey for damages.

## V. NORTH CAROLINA CONSTITUTION ARTICLE 1, §§ 19, 20, 35

115. Stacey realleges and incorporates by reference all preceding paragraphs of this Complaint and further alleges.

116. Stacey has a right to be free from general warrants and have any warrant commanding her seizure to be supported by evidence. Stacey's arrest was without evidentiary support.

117. Stacey has the right to be free from imprisonment and not have her liberty or property taken or injured but by the law of the land. Stacey's restriction of her liberty and culminating in a false arrest was without evidentiary support and thusly not done by the law of the land.

118. The enumeration of Stacey's rights in this Article shall not be construed to impair or deny others retained by the people.

119. Stacey seeks to vindicate her state constitutional rights where no other remedy may be available.

120. The rights enumerated in the State Constitution are to be construed to grant more liberty than what federal law may allow.

## VI. CITY LIABILITY

121. Stacey re-alleges and incorporates by reference all preceding paragraphs of this Complaint.

122. Defendant Greiner is employed by RPD and the City.

123. Upon information and belief, the City has not properly trained, supervised, or disciplined Defendant Greiner or other employees in how to develop reasonable articulable suspicion, probable cause, and identifying a suspect.

124. The City has expressly enumerated the power to regulate and control the use of vehicles, vehicular traffic, and for the parking vehicles upon and along streets in the City of Raleigh. *See* Raleigh, N.C. Code Article II, §§ 2.14(5),(37),(38).

125. The City has purchased automated license plate readers (ALPRs) and affixed them to RPD vehicles as an exercise of this City's power.

126. The City has created directives regarding training and proper usage of ALPRs.

127. Upon information and belief, the City has not properly trained, supervised, or disciplined Defendant Greiner or other employees regarding the use of ALPRs.

128. Upon information and belief, the City has not properly trained, supervised, or disciplined Defendant Greiner and other employees in Non-Biased Policing referred to in Chapter 1100 Section 04 of the Raleigh Police Department Written Directives.

129. Upon information and belief, the City has not properly trained, supervised, or disciplined, Defendant Greiner and other employees in Preventing Perceptions of Non-Biased Policing.

130. Upon information and belief, the City has not properly trained, supervised or disciplined Defendant Greiner and other employees in

131. Upon information and belief, the City has not properly trained Defendant Greiner in other ways not now known, but to be discovered before the close of discovery.

132. Upon information and belief, the City failed to implement polices and training to prevent unlawful seizures and searches that are reasonably likely to reoccur.

133. Further, the City may have enacted, adopted, or ratified an ordinance or policy not currently known to Stacey but may become discovered at a time before the close of discovery which would prevent unlawful arrests and searches in circumstances that are reasonably likely to reoccur.

134. Defendant Greiner's actions or omissions were encouraged or ratified by other members of RPD on the scene.

135. Upon information and belief, some of Defendant Greiner's actions or omissions were later ratified by RPD.

136. That the unlawful and unsupported search and seizure of Stacey was foreseeably encouraged by RPD's failure to properly train, supervise, or discipline its employees.

137. That as a direct and proximate result of the City's failure to train, failure to supervise, failure to discipline, or negligently retaining officers such as Defendant Greiner, Stacey's federal and state's rights were violated.

138. That as a direct and proximate result of the City's failure to train, failure to supervise, failure to discipline, or negligently retaining officers such as Defendant Greiner, the generally accepted customs, policies, and practices caused other members of the RPD to ratify some of Defendant Greiner's conduct.

139. Due to the systemic unconstitutional training practices, or non-compliance with the same, and policies or lack of practices and policies alleged herein, the City is liable for Stacey's damages.

140. Defendants' actions and omissions were willful, wanton, and with reckless disregard for Stacey's Fourth and Fourteenth Amendment rights, as well as her state law rights.

141. Defendants' actions and omissions entitle Stacey to damages.

## VII. PUNITIVE DAMAGES

142. Stacey re-alleges and incorporates by reference all preceding paragraphs of this Complaint.

143. Defendant Greiner's conduct was willful, wanton, and done with reckless disregard for Stacey's rights.

144. Defendant Greiner had no grounds to seize or pat down Stacey.

145. After the pat down turned up no evidence of a crime or risk to her safety, Defendant Greiner intentionally conducted what amounts to a strip search in the middle of the street when she knew several bystanders were observing this interaction.

146. Defendant Greiner indignantly blamed a non-existent registration issue on Stacey for Defendant Greiner's conduct.

147. Defendant Greiner has a history of harassment of residents and their guests in the area she was patrolling.

## **JURY DEMAND**

148. Stacey respectfully demand a trial by jury of all issues in this matter pursuant to Fed. R. Civ. P. 38(b)

**PRAYER FOR RELIEF**

Wherefore upon trial of this matter, Stacey prays that the court enter a judgment in her favor against Defendants jointly and severally.

1. Compensatory damages jointly and severally against all Defendants.

2. Pre-judgment and post-judgment interest, recovery of costs, and Attorney Fees under 42 U.S.C. § 1988 and/or N.C.G.S. § 6-21.7

3. Any other relief the Court may deem just.

This the 14th of April 2023.

Respectfully submitted,

>/s/Dominique Camm
>Dominique Camm #39565
>Freedmen Law Group
>609 S. New Hope Rd.
>Suite 200E
>Gastonia, N.C. 28054
>Telephone: (704) 271-2048
>Fax: (704) 919-5965
>dcamm@freedmenlawgroup.com