IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:23-CV-201-FL

| | |
|---|---|
| STACEY CAMPBELL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | ORDER |
| SAMANTHA GREINER, in her official ) | |
| and individual capacities, and CITY OF ) | |
| RALEIGH, ) | |
| ) | |
| Defendants. ) | |

This matter is before the court upon motion by defendant City of Raleigh (the "city") and Samantha Greiner in her official capacity ("Greiner")[1] to dismiss plaintiff's amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6). (DE 22). The motion has been briefed fully, and in this posture the issues raised are ripe for ruling. For the following reasons, the motion is allowed.

**STATEMENT OF THE CASE**

Plaintiff commenced this constitutional tort suit by filing complaint in this court April 14, 2023. (Compl. (DE 1)). Plaintiff amended her complaint August 31, 2023. (Am. Compl. (DE 18) ("Compl."))[2] Plaintiff asserts numerous claims: 1) false arrest, false imprisonment, and unlawful seizure under North Carolina law; 2) battery under North Carolina law, unlawful search, and

---

[1] Counsel for the city represents defendant Greiner only in her official capacity, and therefore seeks dismissal of plaintiff's claims in this capacity, but not in her individual capacity. (See Reply Br. (DE 26) 9–10, 9 n.12).

[2] Hereinafter, all references in this order to the "complaint" refer to the operative amended complaint at docket entry (DE) 18.

excessive force under § 1983; 3) negligence per se under North Carolina law; 4) intentional and negligent infliction of emotional distress under North Carolina law; 5) constitutional violations under the North Carolina constitution; and 6) a § 1983 claim for failure to train, failure to supervise, failure to discipline, and negligent retention against the city. The claims for false arrest, false imprisonment, unlawful seizure, battery, unlawful search, excessive force, negligence per se, and negligent and intentional infliction of emotional distress are presented against defendant Greiner in both her official and individual capacities. Plaintiff seeks compensatory damages against both defendants and punitive damages against Greiner in her individual capacity, as well as costs and fees.

The city and defendant Greiner in her official capacity filed the instant motion seeking dismissal of plaintiff's claims against them for lack of subject matter jurisdiction, lack of personal jurisdiction, and failure to state a claim. In support of the motion, they rely upon declarations of city employees, Ryan Wilson and Dorothy Kibler. Plaintiff responded in opposition and defendants replied.

### STATEMENT OF FACTS

The facts alleged in the complaint are as follows. Plaintiff is an adult African-American woman who was inside a residence on Pettigrew Street in Raleigh on September 9, 2020. (Compl. ¶¶ 1, 6). Defendant Greiner was on patrol that day for the Raleigh Police Department ("RPD") (Id. ¶ 7). Plaintiff left the residence to retrieve an item from her vehicle, which was parked on the street. (Id. ¶ 9). Plaintiff was wearing a robe and a purse. (Id. ¶ 15).

Defendant Greiner parked and exited her patrol vehicle, and approached plaintiff while shining a flashlight on plaintiff. (Id.¶¶ 10–11). Greiner shouted orders at plaintiff to get her hands out of her pocket, and to stand in front of her car. (Id. ¶¶ 13–14). Greiner did not tell plaintiff why

she stopped her, did not identify herself, and did not ask for identification or the vehicle's registration. (Id. ¶¶ 18–21). Plaintiff has not encountered Greiner before, and does not have a criminal record. (Id. ¶ 22). Greiner performed a pat-down on plaintiff, which involved Greiner shaking down plaintiff's robe, and at one point exposed the bottom half of plaintiff's body to the street. (Id. ¶¶ 23–25).

Defendant Greiner then handcuffed plaintiff "[b]ecause [Greiner] asked [plaintiff] multiple times to put [plaintiff's] hands on the hood." (Id. ¶ 30). Greiner did not ask for plaintiff's name, identification, or vehicle registration before handcuffing her. (Id. ¶ 33). Greiner refused to release plaintiff even after plaintiff consented to a search of her purse. (Id. ¶ 34). Only after returning to her patrol car and doing "something on her computer" did Greiner release plaintiff; Greiner told plaintiff to "figure out what is going on with those tags." (Id. ¶¶ 35–36). According to the complaint, "[t]here was nothing wrong with the registration or tags" on plaintiff's vehicle. (Id. ¶ 37).

**COURT'S DISCUSSION**

A.   Standard of Review

A Rule 12(b)(1) motion challenges the court's subject matter jurisdiction, and the plaintiff bears the burden of showing that federal jurisdiction is appropriate when challenged by the defendant. See McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189 (1936); Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982).[3] Such a motion may either 1) assert the complaint fails to state facts upon which subject matter jurisdiction may be based, or 2) attack the existence of subject matter jurisdiction in fact, apart from the complaint. Bain, 697 F.2d at 1219. Where a defendant raises a "facial challenge[] to standing that do[es] not dispute the jurisdictional facts

---

[3]   Internal citations and quotation marks are omitted from all citations unless otherwise specified.

3

alleged in the complaint," the court accepts " the facts of the complaint as true as [the court] would in context of a Rule 12(b)(6) challenge." Kenny v. Wilson, 885 F.3d 280, 287 (4th Cir. 2018).

Federal Rule of Civil Procedure 12(b)(2) allows for dismissal of a claim for lack of personal jurisdiction. "When a district court considers a question of personal jurisdiction based on the contents of a complaint and supporting affidavits, the plaintiff has the burden of making a prima facie showing in support of its assertion of jurisdiction." Universal Leather, LLC v. Koro AR, S.A., 773 F.3d 553, 558 (4th Cir. 2014). At this stage, the court "must construe all relevant pleading allegations in the light most favorable to plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." Combs v. Bakker, 886 F.2d 673, 676 (4th Cir.1989); see Mylan Labs., Inc. v. Akzo, N.V., 2 F.3d 56, 60 (4th Cir.1993) ("[T]he district court must draw all reasonable inferences arising from the proof, and resolve all factual disputes, in the plaintiff's favor.").

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009).

B.  Analysis

Dismissal is sought on four grounds: 1) the claims against Greiner in her official capacity are duplicative of claims against the city; 2) plaintiff fails to adequately plead a municipal liability claim under § 1983; 3) plaintiff fails to adequately plead a claim under the North Carolina constitution; and 4) the city possesses governmental immunity against plaintiff's tort claims under North Carolina law. The court agrees on all counts.

1.  Official Capacity Claims Against Greiner (First – Fifth Claims for Relief)

A claim against a governmental actor in the official capacity is actually a suit against the underlying entity or governmental body. Kentucky v. Graham, 473 U.S. 159, 166 (1985). Plaintiff's claims against Greiner in her official capacity are really against the city. Plaintiff has therefore sued the same entity twice, and so her claims against defendant Greiner in her official capacity are duplicative under both § 1983 and North Carolina law, and should be dismissed. See Love-Lane v. Martin, 355 F.3d 766, 783 (4th Cir. 2004) (§ 1983); Mullis v. Sechrest, 347 N.C. 548, 554–55 (1998) (North Carolina state law claims). Plaintiff presents no argument on this point.

Therefore, the court grants that part of the instant motion seeking dismissal of all claims against defendant Greiner in her official capacity, and such claims are dismissed for failure to state a claim upon which relief can be granted.

2.  Municipal Liability Claims (Sixth Claim for Relief)

The city argues for dismissal of plaintiff's sixth claim for relief against it, under Monell v N.Y. City Dep't of Social Servs., 436 U.S. 658 (1978), for failure to adequately plead any theory necessary to support a municipal § 1983 claim.

The court notes at the outset that plaintiff presents virtually no argument against the city's briefing on this issue. Plaintiff's brief states that "Raleigh did not prepare a memorandum to argue

5

how [plaintiff] failed to state a municipal liability claim." (Pl's Br. 7). But the city presented thorough argument against the municipal liability claim. (See City's Br. (DE 23) 8–17).

Monell liability will attach only when the defendant causes a deprivation of rights "through an official policy or custom[.]" Lytle v. Doyle, 326 F.3d 463, 471 (4th Cir. 2003). Such policy or custom may arise under any of four theories: 1) through an express policy such as a written ordinance; 2) through the decisions of a person with final policymaking authority; 3) through an omission, such as through failure to train, that manifests "deliberate indifference" to the rights of citizens; or 4) through a practice that is so persistent and widespread as to constitute a custom "with the force of law." Id.

### a. Written Policy

Plaintiff's complaint does not allege any written policy under which Greiner acted to injure plaintiff. The only policy even mentioned in the complaint is a Raleigh Police Department ("RPD") directive on "non-biased policing," about which plaintiff gives no details, contents, or context. (Compl. ¶ 160). Plaintiff's Monell claim therefore cannot rest upon this theory.

### b. Final Policymaker

"[M]unicipal policy . . . may also be found in . . . decisions of municipal officials authorized to make and implement municipal policy." Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999). When conduct is directed by actors who establish governmental policy, the municipality is responsible under § 1983. See Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986). However, such decisions support liability only when the decisionmaker possesses final authority to establish policy with respect to the action ordered. Id. This issue is a question of state law. See id. at 483.

Under North Carolina state law, the Raleigh city manager is the head of city government, with authority over all department heads. See 1949 N.C. Sess. Laws 1442 § 28. This section vests "control" over all officers and employees of the city in the city manager, and provides that they shall "perform such duties as may be required of them" by him. Id. Accordingly, the city manager is the final policymaker under Monell for the actions at issue here. See Lytle, 326 F.3d at 472 (holding Norfolk city manager to be final policymaker because he had authority over police department).

Plaintiff does not adequately allege facts supporting a policymaker theory of liability. The complaint contains virtually no allegations concerning the city manager; instead, it contains a single perfunctory statement that the city acted through the city manager, among several other officials. (Compl. ¶ 45). Merely mentioning the city manager's existence in this fashion is a conclusory allegation that does not establish exercise of policymaking authority sufficient to meet pleading standards. Iqbal, 556 U.S. at 678; see also Armstrong v. City of Greensboro, 190 F. Supp. 3d 450, 476 (M.D.N.C. 2016) (dismissing Monell claim on grounds that plaintiff had failed to sufficiently allege policymaking authority); Everette v. White, No. 4:14-cv-34-FL, 2015 WL 847194, at *6 (E.D.N.C. Jan. 16, 2015) (recommending dismissal of Monell claim for failure to plausibly plead exercise of policymaking authority), adopted, No. 4:14-cv-34-FL, 2015 WL 846748 (E.D.N.C. Feb. 26, 2015). Plaintiff's conclusory assertions, devoid of any facts or details, that the city and the chief of RPD ratified Greiner's actions suffer from the same infirmity. (See Compl. ¶¶ 103, 167). Plaintiff's Monell claim therefore cannot rest upon a policymaker theory.

### c. Failure to Train/Supervise/Discipline

The court next turns to plaintiff's Monell claim insofar as it rests upon the theory that the city failed to train, supervise, and/or discipline Greiner (the "omission theory").

To properly plead such a claim, a plaintiff must show that policies on employee training or supervision, including "decisions of a government's lawmakers, the acts of its policymaking officials, or practices so . . . widespread as to [possess] the force of law," "amount to deliberate indifference to the rights of persons with whom the [employees] come into contract." Connick v. Thompson, 563 U.S. 51, 61 (2011). Deliberate indifference is a "stringent" standard of fault, requiring proof that an actor disregarded known or obvious consequences of action, and a claim against a municipality is "at its most tenuous" when it rests on a failure to train. Id.

Thus to allege a lack of adequate training, a "plaintiff must point to a persistent and widespread practice of municipal officials, the duration and frequency of which indicate that policymakers (1) had actual or constructive knowledge of the conduct, and (2) failed to correct it due to their deliberate indifference." Owens v. Baltimore City State's Att'ys Off., 767 F.3d 379, 402 (4th Cir. 2014). A plaintiff must allege "continued inaction in the face of documented widespread abuses." Grayson v. Peed, 195 F.3d 692, 697 (4th Cir. 1999). A single incident is normally insufficient to make this showing. E.g., Avery v. Burke County., 660 F.2d 111, 114 (4th Cir. 1981); Smith v. Wineman, No. 4:22-cv-76-FL, 2023 WL 4378085, at *4 (E.D.N.C. July 6, 2023). A failure to train plaintiff must "point to a specific deficiency and not a general ineffectiveness of . . . training . . . [which makes] the specific violation a reasonable probability[.]" Semple v. City of Moundsville, 195 F.3d 708, 713 (4th Cir. 1999) (emphasis added). Similarly, a failure to supervise claim can survive only in "situations in which there is a history of widespread abuse." Wellington v. Daniels, 717 F.2d 932, 936 (4th Cir. 1983).

Thus, a plaintiff must establish a "pattern of similar constitutional violations" to support a failure to train or failure to supervise claim. Connick, 563 U.S. at 63 (emphasis added); see Carter v. Morris, 164 F.3d 215, 219 (4th Cir. 1999); Moody v. City of Newport News, Va., 93 F. Supp.

3d 516, 541–42 (E.D. Va. 2015). Similarly, either such claim requires that the particular deficiency have a "direct causal link" with the ultimate injury. Buffington v. Baltimore Cnty., Md., 913 F.2d 113, 122 (4th Cir. 1990).

Here plaintiff's claim premised upon an omission theory must be dismissed because plaintiff does not allege a pattern of similar official misconduct, and because it lacks any substantive facts establishing causation as required.

First, the complaint contains a catalogue of alleged misconduct by other RPD officers in very different contexts. Such alleged misconduct includes an improper warrantless search and arrest, unspecified "unlawful searches, seizures, arrests, and malicious prosecutions," and fabrication of evidence. (Compl. ¶¶ 135–148). These allegations fail to establish a pattern of similar violations. Connick, 563 U.S. at 63; Carter, 164 F.3d at 219. Plaintiff does allege a single instance of an allegedly improper stop and frisk, similar to the alleged misconduct here, (Compl. ¶¶ 149–152), but such isolated incidents fail to establish the pattern required to demonstrate deliberate indifference. E.g., Avery, 660 F.2d at 114.

Second, plaintiff formulaically recites the elements of this claim by simply alleging that the city failed to properly train, supervise, or discipline its employees, and that a causal link exists between such failure and Greiner's actions here (Compl. ¶¶ 107–08); again, these allegations fail to meet pleading standards. Iqbal, 556 U.S. at 678; Barrett v. Bd. of Educ. of Johnston Cnty., N.C., 13 F. Supp. 3d 502, 511 (E.D.N.C. 2014).

Plaintiff suggests that she has pleaded improper training on the use of automated license plate reader systems, (Pl's Br. 7–8), but this is a non-sequitur; the complaint offers no connection between such systems and any of defendant Greiner's conduct, besides asserting that Greiner was improperly trained to use these devices. (See Compl. ¶¶ 155–57).

9

Plaintiff therefore fails to adequately plead a Monell claim through an omission theory.

    d.    Widespread Pattern of Unconstitutional Custom

Finally, a plaintiff may support a Monell claim by alleging a widespread unconstitutional custom or usage. A plaintiff pursuing this theory must demonstrate that the municipality had knowledge of the custom or usage by its policymakers, and those policymakers were deliberately indifferent to correcting the improper custom. Randall v. Prince George's Cnty., Md., 302 F.3d 188, 210 (4th Cir. 2002). However, this claim involves requirements similar to an omission theory: 1) the other alleged misconduct must be similar to that which caused the plaintiff's injuries, Carter, 164 F.3d at 218, and 2) isolated incidents are not sufficient to show deliberate indifference, Lytle, 326 F.3d at 473.

This theory therefore fails for the same reasons as plaintiff's omission theory: plaintiff does not allege any pattern or custom of similar misconduct besides a single other allegedly improper stop and frisk.

Plaintiff counters that she pleads that another RPD officer "testified under oath" that he ignored RPD policies on oversight because "it was the norm" and the "status quo." (Pl's Br. 7). But this argument outright misrepresents the content of the complaint, which contains no reference to this statement being made under oath. (Compl. ¶ 145). Moreover, the alleged decision of one RPD officer, who is unrelated in any way to the underlying events here, to ignore oversight policies does not demonstrate a pattern of constitutional violations similar to those in this action. Plaintiff also perfunctorily alleges that the city has a history of improper stop and frisks, as occurred here. (Compl. ¶ 159). But this statement contains no supporting facts, and so again fails to satisfy pleading standards. Iqbal, 556 U.S. at 678. Plaintiff's Monell claim therefore fails insofar as it rests upon an unconstitutional custom theory.

Because plaintiff's Monell claim cannot survive under any of the four cognizable theories, it fails as a matter of law. Accordingly, the court grants that part of the motion seeking dismissal of plaintiff's sixth claim for relief against them for failure to state a claim upon which relief can be granted.

3.  State Constitutional Claim (Fifth Claim for Relief)

The city argues that plaintiff fails to state a direct claim under the North Carolina constitution (a "Corum claim") because she possesses adequate state remedies, which preclude such claim. The court agrees.

Under Corum v. Univ. of N.C., 330 N.C. 761 (1992), a plaintiff may bring a claim directly through the North Carolina Constitution if the plaintiff's constitutional rights have been violated, and the plaintiff lacks any adequate state remedies. Id. at 782. A Corum claim is permitted only if the plaintiff lacks any adequate state remedy; where such remedy exists, a Corum claim must be dismissed. See id.; see, e.g., Wilcox v. City of Asheville, 222 N.C. App. 285, 298 (2012) (collecting cases). To possess an adequate remedy, the plaintiff must "have at least the opportunity to enter the courthouse doors" to present a claim under another label that "provide[s] the possibility of relief under the circumstances." Craig ex rel. Craig v. New Hanover Cnty. Bd. of Educ., 363 N.C. 334, 339–40 (2009). A remedy's likelihood of success is irrelevant, so long as the plaintiff has the opportunity to pursue it. See id. at 355; see, e.g., Alt v. Parker, 112 N.C. App. 307, 317–18 (1993); Iglesias v. Wolford, 539 F. Supp. 2d 831, 838 (E.D.N.C. 2008) (collecting cases).

Here, plaintiff brings claims under sections 19, 20, and 36 of the North Carolina Constitution for false arrest. (See Compl. ¶¶ 5, 123–28). Plaintiff possesses adequate state remedies under the common law for her constitutional false arrest and wrongful seizure claims; indeed, she pleads exactly these common law claims elsewhere in her complaint against Greiner

11

Case 5:23-cv-00201-FL   Document 28   Filed 03/14/24   Page 11 of 15

in the individual capacity. (Compl. ¶¶ 55–90). Such claims under the common law are adequate state remedies which preclude a Corum claim for violations of the same rights. See Craig, 363 N.C. at 339–40; see, e.g., Rousselo v. Starling, 128 N.C. App. 439, 447–48 (1998) (discussing this circumstance and collecting cases).

Plaintiff's sole argument against dismissal of her Corum claim is that her state remedies are inadequate because the city argues for dismissal of her common law claims. (Pl's Br. 8). However, this argument collides with the principle that a claim need not succeed to be adequate; indeed, Alt held a common law claim adequate even while it affirmed its dismissal as "fatally deficient." See Alt, 112 N.C. App. at 317–18. Further, a claim need be adequate only with respect to the injury alleged, not to the specific defendant at issue. In other words, an available remedy against an official in the individual capacity will preclude a Corum claim against the same official in the official capacity, and the city argues for dismissal of these claims only against Greiner's official capacity. See Craig, 363 N.C. at 340; Taylor v. Wake County, 258 N.C. App. 178, 181–89 (2018) (discussing principle in similar circumstances).

Plaintiff's common law claims for false arrest, false imprisonment, and unlawful seizure constitute adequate state remedies that preclude plaintiff's Corum claim for unlawful arrest under the North Carolina Constitution. Accordingly, the court grants that part of the motion seeking dismissal of plaintiff's fifth claim for relief against them, for failure to state a claim upon which relief can be granted.

4. State Tort Claims Against City (First – Fourth Claims for Relief)

Finally, the city argues that plaintiff's remaining claims against it should be dismissed on the basis of governmental immunity pursuant to Rule12(b)(1) and 12(b)(2). The court agrees.

12

The North Carolina courts have held that governmental immunity is "jurisdictional," but have not specified whether as a matter of subject matter or personal jurisdiction. See Myers v. McGrady, 360 N.C. 460, 465 n.2 (2006) (acknowledging this ambiguity). In practice, federal courts evaluating governmental immunity analyze the issue under both the 12(b)(1) and 12(b)(2) standards. See, e.g., Yarbrough v. E. Wake First Charter Sch., 108 F. Supp. 3d 331, 336 (E.D.N.C. 2015); Frye v. Brunswick Cnty. Bd. of Educ., 612 F. Supp. 2d 694, 701 (E.D.N.C. 2009). As relevant to the city's motion, the court may consult evidence outside the pleadings under either rule. Richmond, Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991) (12(b)(1)); UMG Recordings, Inc. v. Kurbanov, 963 F.3d 344, 350 (4th Cir. 2020) (12(b)(2)).

North Carolina municipalities enjoy governmental immunity from common law tort claims arising from the performance of governmental, as opposed to proprietary, functions. Evans v. Chalmers, 703 F.3d 636, 655 (4th Cir. 2012). Policing is a governmental function. Id. Governmental immunity is a full defense from suit, not just against damages. Davis v. City of Greensboro, N.C., 770 F.3d 278, 281 (4th Cir. 2014). To overcome governmental immunity, a plaintiff must specifically allege a waiver of governmental immunity, which may occur through the purchase of insurance. Paquette v. City of Durham, 155 N.C. App. 415, 418 (2002).

Here, plaintiff alleges a waiver of immunity through the purchase of insurance. (Compl. ¶ 47). The city agrees that it has insurance, but argues that its policy does not waive its immunity. The city has introduced the policy at issue into the record, which the court may consider under the Rule 12(b)(1) and (b)(2) standards. The policy includes a provision stating that it is not intended as a waiver, and provides coverage only for claims to which governmental immunity is clearly inapplicable or for which a court determines immunity is not applicable. (See City's Br. Ex 1 (DE

22-1) 110). This language is similar, indeed almost identical, to policy language both the Fourth Circuit and the North Carolina courts have held did not waive governmental immunity. See, e.g., Evans, 703 F.3d at 655–56; Estate of Earley ex rel. Earley v. Haywood Cnty. Dep't of Soc. Servs., 204 N.C. App. 338, 343 (2010). Plaintiff's briefing does not address this point. (See Pl's Br. 2–6). The court therefore concludes that the city has not waived its immunity through this insurance policy.

Finally, a municipality can waive immunity by creating a self-funded reserve that functions in the same way as insurance. N.C. Gen. Stat. §160A-485(a). However, such waiver extends only so far, and on such terms or conditions, as the city resolution creating the fund specifies. Id. ("adoption of such resolution waives [immunity] only to the extent specified in the council's resolution"); see Arrington v. Martinez, 215 N.C. App. 252, 260 (2011).

The city adopted a resolution in 1999 creating a fund, and providing the terms under which it would waive its immunity. (See City's Br. Ex. 2 (DE 22-2) ¶ 5). This resolution specified procedures with which a plaintiff must comply to trigger waiver: the plaintiff cannot reserve any claims, and must execute a full release to receive any payment. (See id.). This structure is consistent with the statute, which therefore waives immunity only if the plaintiff agrees to the city's terms. N.C. Gen. Stat. § 160A-485(a); see, e.g., Martinez, 215 N.C. App. at 260–64. The city produces an affidavit from its Risk and Insurance Manager testifying that plaintiff has not executed the city's required release. (See City's Br. Ex. 1 ¶¶ 9–14). Plaintiff does not plead or argue otherwise. The city has therefore not waived its immunity through its reserve fund.

In sum, the city has not waived its governmental immunity against plaintiff's common law tort claims. These claims are therefore barred, and must be dismissed.

## CONCLUSION

For the forgoing reasons, motion to dismiss on behalf of the city and defendant Greiner in her official capacity (DE 22) is GRANTED. Plaintiff's claims against the city and Greiner in her official capacity are DISMISSED. Left to proceed in the case are plaintiff's first through fifth claims against defendant Greiner in her individual capacity. A separate order will issue immediately directing the remaining parties' pretrial conference activities and subsequent report to the court in accordance with the Federal Rules of Civil Procedure and this court's Local Rules.

SO ORDERED, this the 14th day of March, 2024.

_____
LOUISE W. FLANAGAN
United States District Judge